Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence. Their stipulations included the following:
a. The carrier on the risk is Crawford Co.;
 b. The employee-employer relationship existed between plaintiff and defendant at all relevant times;
 c. Plaintiff's average weekly wage was $290.40 yielding a compensation rate of $189.86 per week;
d. The date of the alleged incident was 1 April 1995;
 e. Defendant regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act; and,
 f. The issues before the Deputy Commissioner were whether plaintiff's claim was compensable under the Act, and, if so, what benefits were due.
2. Subsequent to the hearing an index of medical records marked as stipulated exhibit 1 was received into evidence.
3. After the plaintiff's alleged injury by accident, he received short-term disability benefits pursuant to a completely employer funded short-term disability plan totaling $1691.63.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner, with modifications, and finds as follows:
 FINDINGS OF FACT
1. The Industrial Commission has jurisdiction over the parties and subject matter.
2. At the time of the hearing, plaintiff was a sixty year old male who had a fifth grade education. Plaintiff worked for defendant for over ten years as a mechanic. Plaintiff's job duties included repairing pinsetter machines in a bowling alley.
3. Prior to 1 April 1995, plaintiff had a symptomatic preexisting arthritic condition in his neck as a result of a narrowing of the space where the nerves ran down to his right arm.
4. On 1 April 1995, plaintiff was performing his regular job duties for the defendant when he sustained a stroke that was not work-related. Although it is medically impossible to determine whether the stroke preceded the fall or vice versa, it is more likely that plaintiff fell as a result of the stroke, thus aggravating his preexisting arthritic condition in his right arm and neck.
5. On 1 April 1995, plaintiff sought treatment at the emergency room at the Piedmont Medical Center. Plaintiff or his wife reported that plaintiff had been forgetful during the last few days. A neurological exam which was conducted at that time revealed that plaintiff had good short-term memory recall. Plaintiff or his wife reported that plaintiff may have injured his right arm in a fall that took place when his knee gave out a few days earlier. Furthermore, plaintiff reported that he fell at work.
6. From 1 April 1995 until sometime between 17 May 1995 and 23 May 1995, plaintiff did not report to anyone that he had injured his neck and right arm as a result of having been struck by a bowling pin.
7. At least since the time of the stroke, plaintiff's wife has been the decision-maker in their marriage. Plaintiff's wife believes that since his injury plaintiff has not been a husband or a father. Plaintiff's wife dominated discussions during the appointments with Dr. Mandell and the plaintiff. The stroke, as well as the neck and arm injuries that plaintiff sustained, has affected plaintiff's self-perception concerning his role as a man in the context of his marriage. From the very first week following his stroke, plaintiff would have inexplicable crying episodes. Plaintiff and his wife have had marital problems to the point where they have almost separated because of plaintiff's lack of judgment and inability to cope.
8. Prior to 17 May 1995, defendant denied plaintiff's workers' compensation claim based upon a defense that plaintiff fell and injured himself as a result of a stroke. On 17 May 1995, plaintiff's wife argued with representatives for defendant over whether plaintiff fell and had a stroke or had a stroke and then fell.
9. In the middle of the night sometime between 17 May 1995 and 23 May 1995, plaintiff woke up his wife and told her that he now remembered how he had injured his neck and arm. Plaintiff told his wife that he injured himself as a result of a bowling pin striking him on the elbow, which caused his head to hit the wall on the backside of the alley behind the bowling lanes.
10. On 23 May 1995, plaintiff reported to Dr. Mandell that he now remembered that he had injured himself as a result of a bowling pin striking his elbow.
11. The stroke prevented plaintiff from having any memory of events during the time of the stroke and immediately afterward when he was dysfunctional. Plaintiff's memory as to the events surrounding the stroke was fuzzy when he discussed the circumstances with Dr. Mandell. Plaintiff is very suggestible as to what happened on 1 April 1995.
12. The stroke that plaintiff sustained organically caused plaintiff's disabling depression. If there had not been a stroke, plaintiff's right arm injury would not have caused a disabling depression.
13. As a result of his neck and arm injury, plaintiff was unable to earn wages from 1 April 1995 to 1 February 1996.
14. Plaintiff's inability to work as a result of his right arm injury was not a significant contributing factor in the development of plaintiff's ongoing depression.
15. Even assuming plaintiff fell before experiencing a stroke, such fall did not aggravate, exacerbate, or accelerate the stroke sustained by plaintiff.
16. Plaintiff did not testify at the first hearing that he had experienced fifty prior episodes where he had been struck by a bowling pin.
17. After learning the basis of defendant's denial of his claim, plaintiff attempted to create a set of circumstances that would support his workers' compensation claim. Plaintiff was pressured by suggestions from his wife as well as his inability to earn wages. Plaintiff did not injure his right elbow as a result of having been struck by a bowling pin. Based upon the initial report made at the emergency room, the timing of plaintiff's revelation as to how he was injured, and the Deputy Commissioner's observation of plaintiff's demeanor as well as the tone of his of voice in response to cross-examination, the Deputy Commissioner found, and in deference the Full Commission finds, that plaintiff's testimony was not credible with regard to his claim that his elbow was struck by a bowling pin.
18. Based upon the initial report made at the emergency room, the timing of the plaintiff's revelation as to how he was injured, and the Deputy Commissioner's observation of plaintiff's wife's demeanor as well as the tone of her voice, the Deputy Commissioner found, and in deference the Full Commission finds, that plaintiff's wife was not credible with regard to her claim that from the first day that plaintiff had the stroke, plaintiff maintained to her that something had hit his arm. The Full Commission declines to reject the Deputy Commissioner's credibility findings and therefore adopts them.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
1. On 1 April 1995, plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusion of law, the Full Commission enters the following:
 ORDER
1. Under the law plaintiff's claim must be and is hereby DENIED.
2. Defendant shall pay an expert witness fee in the amount of $250.00 to Dr. Mandell.
3. Each side shall pay its own costs.
 S/ ________________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, JR. COMMISSIONER
S/ ______________________ DIANNE C. SELLERS COMMISSIONER